UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | ) ) ) ) ) ) CASE NO. 19-sw-5661-SKC  **Filed Under Restriction** |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under restriction from public access this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Sprint Corp., a Cellular Service Provider located in Overland Park, KS, to disclose certain records and other information pertaining to the cell phone number: 303-601-2180**.**  The records and other information to be disclosed are described in Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Sprint Corp. is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require Sprint Corp. to disclose the items described in Part II of Attachment A, as these records pertain to a subscriber of electronic communications service and/or a remote computing service, and are not the contents of communications. *See* 18 U.S.C. § 2703(c)(2); 18 U.S.C. § 2703(c)(1).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The United States is investigating criminal activity involving drug trafficking. The investigation concerns possible violations of, inter alia, 21 U.S.C. 841(a) and (b)(1) (Manufacturing, distributing, or possession with intent to manufacture or distribute a controlled substance) and 21 U.S.C. 846 (Conspiracy to commit a controlled substance offense).

5. During January 2019 through the present, a Drug Enforcement Administration (DEA) Confidential Source (CS-1) maintained contact with Benjamin DELANGHE, who used mobile subscriber telephone number (303)-601-2180, in order to arrange the sale of cocaine.

6. On March 8, 2019, CS-1 arranged the purchase of two ounces of cocaine from Benjamin DELANGHE.  According to CS-1, Benjamin DELANGHE was in possession of the cocaine at his residence located at 3458 W 33rd Ave., Denver, CO 80211 prior to the transaction

and was the one who provided the cocaine to CS-1.  CS-1 gave $3000.00 to Benjamin DELANGHE in exchange for the cocaine.  Following this controlled purchase, DEA agents tested the suspected cocaine which field tested positive for the characteristics of cocaine.

7. On April 15, 2019, CS-1 contacted Benjamin DELANGHE via his mobile subscriber number (303)-601-2180, to send a text message which read: "I have the money for 2 ounces.  What is a good time for you?"  Benjamin DELANGHE replied, "Tomorrow or today?" CS-1 replied, "Tomorrow." Benjamin DELANGHE replied, "2700".  CS-1 informed DEA Special Agent Jared R. Delaney that Benjamin DELANGHE reduced the price from $3000.00 to $2700.00 for two ounces of cocaine.

8. On April 16, 2019, CS-1 arranged for and purchased two ounces of cocaine from Benjamin DELANGHE for $2700.00.  DEA Task Force Officer Sean Radke witnessed Benjamin DELANGHE arrive at his residence located at 3458 W 33rd Ave., Denver, CO 80211, exit a grey Honda Ridgeline, bearing Ontario license plate AA82318 and enter the residence in order to carry out the controlled purchase.  Benjamin DELANGHE parked the vehicle on the curb in front of his residence.  Shortly after, CS-1 entered the residence and purchased the two ounces of cocaine from Benjamin DELANGHE for $2700.00.  Following this controlled purchase, DEA agents tested the suspected cocaine which field tested positive for the characteristics of cocaine.

9. From April 16, 2019 to June 05, 2019, SA Delaney, acting in an undercover capacity, was in contact with Benjamin DELANGHE through the phone application Signal.  CS-1 had provided Benjamin DELANGHE with SA Delaney's phone number and explained to Benjamin DELANGHE that SA Delaney was interested in kilogram amounts of cocaine.

Benjamin DELANGHE told CS-1 that he had access to kilogram amounts of cocaine. Benjamin DELANGHE contacted SA Delaney through the Signal app and informed SA Delaney that he would sell a kilogram of cocaine for $42,000. SA Delaney asked Benjamin DELANGHE if he could get a cheaper price. Benjamin DELANGHE replied, "I'll see what my guy can do, will you be repeat/future or just filling in an order? It comes stamped etc., tests higher than anything I've seen since moving here." SA Delaney replied, "Definitely repeat." Benjamin DELANGHE replied, "If repeat for sure he'll do 76 for 2 for first and down to 70 for 2 at some point down the line." SA Delaney asked Benjamin DELANGHE if he could buy an ounce from the kilogram of cocaine. Benjamin DELANGHE replied, "I can't front the grip to take it home is the part my dude. I *can* have us all meet after $ is down and guarantee you take it back after a test that day. Think you've had had some of this so far and you know it's nice but at the same time I can't take zip off a brick without securing the brick and I straight don't have that flush ATM. Best bet we meet neutral crib at my boys, you test and watch off the cake and that's what it do but I need 48 hours for that. Best part is you can say "Nah" and we have 2 other distros. No guarantee they better but we have the lock on everything here. Hope that makes some sense. Either way happy ti have a drink and bring you the normal flow for nothing this week before Friday." SA Delaney asked where he wanted to meet and Benjamin DELANGHE replied, "It'll be at my place in the highlands. I'll let you know time and address when he responds."

10.   On June 5, 2019, CS-1 and SA Delaney met with Benjamin DELANGHE at his residence located at 3458 W 33rd Ave., Denver, CO 80211. Prior to the meet, SA Delaney negotiated a deal with Benjamin DELANGHE to buy two kilograms of cocaine for $70,000. While SA Delaney was at Benjamin DELANGHE's residence, DEA SA Scott on surveillance

witnessed a Volvo bearing plate number 834XBW, circling the block and driving in a manner that is typical of individuals that transport narcotics in their vehicle.  At the same time, Benjamin DELANGHE informed SA Delaney that the two kilograms were in a vehicle outside and he would have them bring in the cocaine once he received the money.

      11.     SA Scott later witnessed a second vehicle, a black Chevrolet Silverado bearing CO plate 607QND, park in front of the residence and wait outside the residence while SA Delaney was inside the residence.  After SA Delaney left the residence, SA Scott witnessed a male, later identified as Jason LUCAS, exit the vehicle and enter the residence carrying a backpack.  Shortly after, SA Scott witnessed Jason LUCAS exit the residence with the same backpack, enter the black Chevrolet Silverado, and depart the area.

      12.     Following the June 5, 2019 meeting, investigators contacted Enterprise regarding the Volvo and learned the vehicle had been rented by Zachary Allen WEST, DOB 1-29-1991.  At the time WEST rented the vehicle, he provided an address of 1880 Arapahoe St., Denver, CO, 80231, and a telephone number of (720) 550-3869.  A law enforcement database check reveals that telephone number (720) 550-3869 is associated with service provider AT&T.  Information obtained from AT&T reveals that the telephone number is registered to Zachary A. WEST, with a listed address of 7474 E. Arkansas, #1306, Denver, CO 80231.   Law enforcement databases list both 7474 E. Arkansas, #1306, and 1880 Arapahoe St., #3701, Denver, CO as addresses associated with Zachary WEST.  A photograph of Zachary WEST available on law enforcement databases shows clear resemblance to the individual observed to be driving the Volvo at and near Benjamin DELANGHE's residence on June 5, 2019.

13. A law enforcement database check reveals that telephone number (303) 601-2180 is associated with service provider Sprint.  Information obtained from Sprint reveals that the telephone number is registered to Benjamin DELANGHE, with a listed address of 3458 W. 33rd Ave., Denver, CO 80211, the same residence visited by CS-1 and SA Delaney, as described above.  As noted above, (303) 601-2180 is the telephone number previously used by Benjamin DELANGHE when communicating with CS-1 regarding purchases of cocaine.

14. Based on the above referenced information, the ongoing criminal investigation regarding Benjamin DELANGHE, Zachary WEST, Jason LUCAS, and others would be furthered by access to real-time dialing, routing, addressing, and signaling information related to the telephone number (303) 601-2180 associated with Benjamin DELANGHE, and there are reasonable grounds to believe this information is relevant and material to an ongoing criminal investigation.  This information will allow investigators to identify telephone numbers and/or individuals with whom Benjamin DELANGHE corresponds regarding suspected distribution of controlled substances and conspiracy to commit the same, as described above.  These telephone numbers and/or individuals include Zachary WEST, Jason LUCAS, and other unknown individuals with whom Benjamin DELANGHE may communicate and/or conspire.  Finally, this information will assist investigators in better understanding the nature and scope of the conspiracy and the drug trafficking and distribution activities of Benjamin DELANGHE, Zachary WEST, Jason LUCAS, and other unknown individuals or organizations.

<u>REQUEST FOR ORDER</u>

15. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are

relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that Sprint Corp. be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of the service of the Order.

16. The United States further requests that the Order require Sprint Corp. not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order for a period of one year from the date of the Order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that involves the prolonged use of DEA undercover agent(s) and CS-1, the cooperation of whom is unknown to all the targets of the investigation, the ongoing investigation is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual, namely CS-1 referenced herein. . *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored

electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

17.     The United States further requests that the Court order that this case, namely the application and any resulting order, be restricted from all public access until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to restrict these documents from public access because their premature disclosure may seriously jeopardize that investigation.

    Respectfully submitted,

    ROBERT C. TROYER
    UNITED STATES ATTORNEY


    *s/Conor A. Flanigan*
    Conor A. Flanigan
    Assistant United States Attorney
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Telephone: 303-454-0100
    Email: Conor.Flanigan@usdoj.gov